Ronald OSBORN, Appellant,

v.

ORTHOPAEDIC ASSOCIATION OF KANSAS CITY, INC., and John W. Collins, M.D., Respondents.

No. WD 45582.

Missouri Court of Appeals, Western District.

Oct. 6, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1992.

Application to Transfer Denied Jan. 26, 1993.

Walter R. Simpson, Kansas City, for appellant.

D. Bruce Keplinger, Overland Park, for respondents.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Ronald Osborn, appeals from an adverse judgement, after trial by jury, on his claim of medical malpractice against respondents, John W. Collins, M.D., and the corporation by which Dr. Collins was employed, Orthopaedic Association of Kansas City, Inc.

On July 27, 1980, Dr. Collins performed surgery on Osborn's broken right leg. In repairing the break, Dr. Collins inserted a metal plate, affixed by screws, into Osborn's right leg. A clamp was used to hold the metal plate in place while the screws were inserted. During the operation a piece of the clamp broke off and remained in Osborn's leg when the wound was closed. The piece of broken clamp was not discovered by Dr. Collins until he observed it on an x-ray after the operation.

On December 18, 1989, Osborn filed suit against Dr. Collins and Orthopaedic Associates of Kansas City, alleging negligence arising from the piece of broken clamp being left in his leg. Osborn's claim was found against him and in favor of respondents.

In his first point on appeal Osborn argues that the trial court erred by submitting Instruction Number 7 because it did not properly submit the issue of the statute of limitations in regard to his discovery of respondents' negligence.

The relevant statute of limitations is § 516.105, RSMo 1986, which provides in pertinent part as follows:

All actions against physicians, ... and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, ... except that in cases in which the act of neglect complained of its [sic] introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs, but in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of.

In the case at bar, Instruction No. 7, a not in MAI instruction, was submitted to the jury as an affirmative converse as follows:

Your verdict must be for defendants if you believe plaintiff was aware a broken piece of clamp was in his leg before December 18, 1987, and plaintiff was aware before December 18, 1987, the broken piece of clamp needed to be removed.

Osborn's objection to Instruction No. 7 at trial and on appeal is that it did not require the jury to find that Osborn discovered, two years prior to the time that he filed suit, that it was negligent for Dr. Collins to have left the piece of clamp in his leg. Osborn further objects for the first time on appeal that Instruction No. 7 is vague, misleading, confusing and gave the jury a roving commission.

▮ All instructions are required to be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary findings of fact. Rule 70.02(a).

The ultimate test of an instruction not in MAI is whether it follows the substantive law and can be readily understood. *Bayne v. Jenkins*, 593 S.W.2d 519, 530 (Mo. banc 1980), (citations omitted). In cases involving a statutory violation, it is generally sufficient to couch a verdict-directing instruction substantially in the language of the statute unless the statutory language requires construction. *Id.*

▮ In the case at bar, Dr. Collins testified and presented evidence to show that he advised Osborn of the piece of broken clamp remaining in Osborn's leg immediately after the operation while Osborn was still hospitalized in July, 1980. Dr. Collins testified that he advised Osborn that he could have the piece of broken clamp removed during that hospitalization or he could wait until the metal plate and screws were removed when the broken bone had healed. Dr. Collins testified that Osborn elected to wait to have the piece of broken clamp removed when the plate and screws were taken out. Dr. Collins saw Osborn for five follow up visits through January of 1981 and then Osborn did not return to him for further treatment.

On February 9, 1987, Osborn saw Dr. Glen Bryan complaining of pain in his right leg. Dr. Bryan testified that he told Osborn that there was a piece of a broken clamp in his leg that needed to be removed along with the metal plate and screws. Dr. Bryan saw Osborn again in July of 1987, and gave him the same advice.

Osborn denied that either Dr. Collins or Dr. Bryan advised him that he had a piece of a broken clamp in his leg. Osborn testified that he did not become aware of the piece of broken clamp until he saw a Dr. Mast on December 22, 1987.

▮ This evidence presented a question of fact as to when Osborn learned that he had a piece of broken clamp in his leg that needed to be removed. Instruction No. 7 submitted precisely this issue to the jury. As framed under the evidence and the issue presented in this case, the instruction

was couched in the relevant language of § 516.105, RSMo 1986, in a simple, brief, and impartial fashion free from argument and without submitting or requiring detailed findings of fact. Once Osborn discovered that he had a piece of broken clamp in his leg, he was capable of discovering, in the exercise of ordinary care, any negligence by Dr. Calkins for not removing the broken clamp or advising that it should be removed.

Osborn's challenge to Instruction No. 7 is denied.

In his second point, Osborn argues that the trial court erred by failing to grant a new trial because of misconduct on the part of the bailiff.

 Court officials should not do anything which might influence the conduct of the jury in favor of either party. *Shearin v. Fletcher/Mayo/Associates*, 687 S.W.2d 198, 204 (Mo.App.1984) However, whether a new trial shall be declared as a result of misconduct of a court official is within the discretion of the trial court unless it is of such serious import to be considered prejudicial as a matter of law. *Rovak v. Schwartz*, 339 S.W.2d 756, 758 (Mo.1960).

 The record reflects that while the jury was deliberating, the bailiff was asked by a juror whether the judge could explain an instruction. Without consulting anyone else, the bailiff informed the juror that the jury could ask the question, but the response would be the same as the response given to a previous question which was that the jury would have to be guided by the instructions given and evidence in the case.[1] The trial judge further made a record reflecting that the response given by the bailiff is the response always given by the trial judge in the case at bar to similar inquiries by juries.

---

1. There was also a dispute at the hearing on Osborn's Motion for New Trial as to whether the bailiff told any juror that if the jury was deadlocked, that Osborn would loose. A juror testified, without objection, that she had been so advised by the bailiff. Another juror testified to being similarly so advised. However, the bailiff denied making any such statement.

A bailiff should not attempt to answer such an inquiry from a juror. Such an inquiry should be referred to the court for a response. However, under the circumstances of the case at bar it was not an abuse of discretion for the trial court to deny Osborn's Motion for New Trial on this basis. The bailiff's response was not incorrect or misleading, it was the same as a previous response in the case at bar and it was consistent with the response given as a matter of course upon similar inquiries from juries by the judge presiding.

The judgment is affirmed.

All concur.

On appeal of court tried matters we accept the evidence most favorable to the trial court's judgment and disregard all evidence to the contrary. *McMurray v. Director of Revenue*, 800 S.W.2d 820, 821 (Mo.App.1990). The trial court found against Osborn on his Motion for New Trial. Therefore, we ignore the disputed evidence as to whether the bailiff said anything about Osborn winning if the jury was deadlocked.